Kinsey C. J.
The negro who has been brought before the court upon the return of this writ, was it appears committed to gaol by the sheriff in October 1793. and has remained in confinement since that period.
A certain Mr. Snowden now comes forward and claims him as his slave. In order to make out his title to him he produces a bill of sale of the boy from L Heard, executed I think since the commitment. Capt. Thomas who was called as a witness to support this claim swears, that Heard and himself together in the year 1784 bought this lad from one Conner in Philadelphia for 40 guineas: that, the boy lived with him about a year, when he conveyed his right in him to Heard with whom he lived until he ran away. Thomas says that he never heard any “ talk of his being free;” — that Conner said he bought him of one James. Two witnesses prove that Conner had the negro in his possession at New-York, and that Heard had him in New-Jersey.
On the other hand it has been proved that antecedent to all this, and before the surrender of New-York to the American army in 1779, this boy, then about 12 or 18 years of age, was in the service of Colonel Tarleton as a hostler; — -that he belonged to the regiment! and was considered as a prisoner and not as a slave. When Tarleton went to England, he left this boy with a servant woman, who married a man of the name James, and whom as Davis who relates these facts, says, he heard was about selling the negro to one Conner-. — that with regal'd to the manner in which he had originally come into the possession of the British, it wasjjreported that an en| sign had taken him up behind him, and brought him within their lines.
On this statement of the evidence it appears to me, that whether Cork is a freeman or not, is a question upon which this court are not at present called upon to give any opinion. Whether Snowden has made out his claim so as to entitle him to the order of the court that the boy should be delivered to him, is another upon which it is necessary that we should give our decision.
Upon this question we are to observe that it is a notorious fact in the history of the late war between the United States *330 and Great Britain, that Lord Dunmore in order to distress the state of Virginia most inhumanly attempted to arm the negro slaves against their masters; that he invited them to join him by a proclamation, and to induce them to this measure he proffered them their freedom. It is a fact equally true and equally well known, that many were so far seduced by his promises, as to leave their masters and join his forces.
Whether the boy now claimed was of the number of those who voluntarily went within the British lines, or whether he was taken as part of their plunder, and carried compulsorily has not, and cannot be proved. The first time that he is brought before our view by the evidence is in 1779; At that time, as the' witness Davis says, he was in the British regiment commanded by Tarleton, doing duty there and training his horses: — he was then reputed to be a prisoner; and not a slave; and this idea is confirmed by his being in that situation. He continued with Tarleton while that officer remained in this country; and when he went to England, he left Cork in the possession of a servant woman, a person whom no one would suppose could have been honestly possessed of property of this kind in her own right.
If the negro, originally, went voluntarily to- the British, as to them he was undoubtedly entitled to his freedom: they had no right which they could legally convey to another. If he was plundered or taken as the property of an enemy some-authority should be produced to warrant the robbery, or the decision of some court to sanction this alleged transference of property from the original owner. (a) In either of these points of view I am unable to perceive the justice of Snow-den's claim or the propriety of sustaining it; it being founded on the right of James. No right to the boy has been proved to exist either in Jumes or his wife; on the contrary the witness says, that he was in the regiment during the whole time that Tarleton staid in America, that there was no report of his selling Cork till after his departure, — and that in the regiment he was considered as not the object of sale.
*331 Nor can any inference be derived from the possession and, die acquiescence of the boy. if his going originally to the British was voluntary, the fear of punishment might have induced him to submit to almost any thing, in preference to a return to his American master. If taken by force, his conscious inability to prove the compulsion might have suggested the same apprehension. In either case his acquiescence and submission was better than any course which had a tendency to reduce him to his former state of slavery.
The claim of Snowden is in my opinion, therefore, not proved with sufficient clearness to warrant me in saying that he has any property in the boy. No, other claim has been preferred, and after so great a length of time he ought to be liberated from his confinement,.
Smith J. Concurred with the Chief Justice.
Chetwood J.
After stating the circumstances of the case as detailed in the testimony.
From the evidence thus laid before us I think we may reasonably infer,-—
That there is scarcely a probability that a negro boy of IS or 14 years of age should he entitled to his freedom in Virginia. — It appears from the Annual Register and from Ramsay's History of theRevolution that Lord Dunraore in ±775, issued a proclamation proffering freedom to all the slaves who would join himj and this boy did join him is in proof. Under what circumstances this was done, whether voluntarily or compulsorily, rests altogether upon loose and casual hearsay; and this court cannot determine the fact from such testimony.
Whether the black is entitled to his freedom, therefore, we are without the means of ascertaining. No claim to detain Mm in gaol seems to be -supported, and we think it right to relieve him from the imprisonment of Heddon, without prejudice to any claim that may be hereafter made to him.
What is to be done with him is the next question.. It has feeen laid, down as a rule in this court, that a person applying for his freedom must show that he is free (State v. Hunt,) and whenever the negro applying has failed in doing this, he *332 has been remanded to the custody of the person, in whose possession he was, and claiming a right to his services. It is tl Ue s^aveiT is incompatible with liberty, and does not correspond with the true principles of a Republican government; but it is recognized by our laws, and it exists in New-Jersey. Negro slaves have always been looked upon in the same light with other personal property, and transferred in the same manner. It is a rule of law applicable to personal property, that possession constitutes a sufficient title against all persons except the rightful owner; who, whenever he appears, may claim and recover that which belongs to him. The negro in this case has undertaken to prove that he is free, and failing in this, the effect of his application ceases. I am therefore of opinion that he should be delivered to the person in whose possession he has so long been, I mean Heard or those who claim under him,

Negro discharged*

 Note—See Jenkins v. Putman 1 Bay. 8, 10.